**Joseph SEIBERT, #76649, Plaintiff,**

**v.**

**Sam JOHNSTON, Acting Warden, Oklahoma State Penitentiary, Defendant.**

**No. 74–145–C.**

United States District Court,
E. D. Oklahoma.

Aug. 14, 1974.

Joseph Seibert, pro se.

Kay Karen Kennedy, Asst. Atty. Gen., Oklahoma City, Okl., for defendant.

## ORDER DISMISSING CAUSE OF ACTION AND COMPLAINT

MORRIS, District Judge.

Plaintiff, an inmate in the Oklahoma State Penitentiary, has brought this action under the Civil Rights Act, 42 U.S. C. § 1983, against the defendant, Sam Johnston, Acting Warden, complaining that acting under color of state law said defendant deprived plaintiff of certain of his civil rights in connection with his confinement as a prisoner in the Oklahoma State Penitentiary.

In particular plaintiff complains of certain orders relating to the classification of prisoners. He complains of an order dated December 1, 1973, and a letter dated December 26, 1973, dealing with maximum custody in the institution, which order and letter set forth the reasons for placing certain inmates in maximum custody and for depriving them of certain personal articles while being confined in the Oklahoma State Penitentiary. Plaintiff complains that he was placed in maximum custody pursuant to these directives and deprived of certain privileges, to-wit: that he was required to eat in his cell; that he was denied the opportunity to eat in the prison mess hall; that he was denied use of the visiting room and that he was denied an opportunity to work. He also complains that while in this status he was deprived of two radios and of a fan, which personal property he alleges constitute no security risk. He further alleges that he was denied a hearing before being placed in maximum custody status and denied an appeal from the application of the rule placing him in such status. He alleges that his confinement in maximum custody, the denial of a hearing and the taking of his personal property as aforementioned were in violation of his constitutional rights and requests a declaratory judgment by the Court that the acts of the defendant were in violation of plaintiff's civil rights under the Constitution of the United States.

The defendant answered the complaint denying all of the allegations contained therein.

In his complaint plaintiff requested the Court to adjudicate the issues raised by the pleadings by way of summary judgment. Thereafter plaintiff filed on June 4, 1974, and again on July 15, 1974, motions for summary judgment. On July 2 and July 30 the Court entered orders denying the motions for summary judgment and stated that there were genuine issues of fact which could only be determined by way of trial.

The case was set for trial on August 9, 1974, and the State of Oklahoma vol-

untarily produced plaintiff in open court so that he could testify regarding his complaints. At the outset of the trial plaintiff again orally renewed his motion for summary judgment and requested the Court to consider in support of his motion an additional document dated July 1, 1974, signed by Harold E. Wilson, Acting Warden, entitled "Operations Memorandum."

The Court advised the plaintiff that his first two motions for summary judgment had been denied for the reason that it was quite apparent that factual issues were raised by the pleadings which could only be determined after an evidentiary hearing; that the case had accordingly been set for trial on this day and that this was plaintiff's opportunity to testify in his own behalf concerning the factual matters set forth in his complaint. The plaintiff refused to testify in his own behalf and failed to produce any evidence in support of the allegations contained in his complaint. He again requested the Court to dispose of the matter by way of summary judgment.

■ It is abundantly clear that factual issues were raised by the pleadings. These include whether or not plaintiff was in fact placed in maximum custody, whether or not the defendant ordered the plaintiff to be placed in maximum custody, whether or not there was a hearing in connection with the confinement of the plaintiff in maximum custody, if he was so confined, and whether or not the plaintiff was deprived of personal property. It is thus apparent that the issues as raised by the pleadings could only be determined by an evidentiary hearing.

■ The plaintiff was afforded every opportunity to present evidence in his own behalf. He refused to do so and the defendant moved for dismissal. Rule 41(b) of the Federal Rules of Civil Procedure clearly authorizes dismissal for "failure of the plaintiff to prosecute." The Court of Appeals for the Tenth Circuit has stated:

"There is no dispute about the applicable law. Both under Rule 41(b), F.R.Civ.P. and the inherent power of a judge, a case may be dismissed with prejudice for want of prosecution. The exercise of this power by the trial judge is discretionary and should be sustained upon appeal in the absence of abuse." Davis v. Operation Amigo, Inc., 378 F.2d 101 (10th Cir. 1967).

See also Food Basket, Inc. v. Albertson's, Inc., 416 F.2d 937 (10th Cir. 1969); Shotkin v. Westinghouse Electric & Mfg. Co., 169 F.2d 825 (10th Cir. 1948).

■ It has also come to the Court's attention and the Court takes judicial notice of the fact that since this case came on for trial on August 9, 1974, plaintiff has escaped from the Oklahoma State Penitentiary at McAlester.[1] Although the case at bar is a civil case it is not unlike the circumstance presented when a defendant in a criminal case who is free on bail pending an appeal becomes a fugitive from justice and flees the jurisdiction of the court. The Court of Appeals for the Tenth Circuit has quoted the opinion of the Supreme Court of the United States in Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L. Ed.2d 586 (1970) which is apropos in the case at bar:

" 'No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.' " United States v. O'Neal, 453 F.2d 344 (10th Cir. 1972).

---

1. See Appendix A.

It is the Court's view that in a civil rights case when plaintiff escapes from the institution to which he has been confined only two days subsequent to the day of trial, that he is also disentitled "to call upon the resources of the Court for determination of his claims." And especially is this so when the essence of his complaint is that he was unjustifiably placed in a maximum custody confinement status.

For the reasons set forth herein plaintiff's complaint and cause of action should be dismissed.

It is so ordered.

## APPENDIX A

# THE DAILY ( Inflation Fi

COPYRIGHT, 1974, THE OKLAHOMA PUBLISHING-CO., 500 N. BROADWAY, BOX 25125 OKLAHOMA CITY, OKLA. 73125

## LABELED 'DANGEROUS'

# Slayer Slips From Prison

By Tom Rutland

McALESTER — A convicted killer and robber, once described by a federal judge as "a dangerous man" escaped from the state prison here over the weekend, authorities revealed Monday.

Joseph Seibert, 38, apparently scaled a prison wall, hid for several hours beneath a blanket on the roof of the old prison administration building, then somehow negotiated his final hurdle — a high, wire mesh fence which surrounds the penitentiary.

It was the first escape from behind Oklahoma State Penitentiary walls since nine men tunneled out in February, 1973, a spokesman said.

Siebert, who was serving 150 years for armed robbery from Tulsa County, remained at large late Monday night.

Prison officials were investigating the apparent involvement of an Oklahoma City murderer in the escape.

Acting Warden Bud Wilson said he would question Alan Leroy Fulbright on Tuesday to determine whether he might have attempted to escape.

Fulbright was sentenced to death in 1971 for the shotgun slaying of Carolyn Sue Trout earlier that same year. Her body was found on an Oklahoma

Continued on Page 2, Col. 2

## Slayer Slips From Prison

Continued From Page One

County oil lease.

His sentence was commuted to life imprisonment last year in the wake of a U. S. Supreme Court ruling that set aside death penalties.

A spokesman for the state Department of Corrections, Howard Inglish, said Seibert's escape was discovered about 4 p.m. Monday.

He was last seen Saturday night. Officials believe he made his getaway around dawn Sunday.

His absence went undetected because the inmate had fashioned a dummy from blankets and the guards on successive shifts believed he simply was sleeping in his cell.

Inglish said it is not uncommon for inmates to remain in their cells at mealtime, even though all the cell doors are opened. Too, it rained most of the weekend at McAlester and many inmates stayed inside, he said.

Wilson said Seibert apparently began his escape Saturday afternoon when he hid behind a corner out of sight of guard towers, when a number of inmates were taken from the southeast exercise yard back to their cell block.

Officers theorize Seibert then climbed to the roof of the old administration building, which is between the rotunda and the new administration building. A blanket was found on the roof, indicating Seibert, clad in a white T-shirt and denim pants, hid there for a time.

He apparently used a garden hose to climb down from the roof. From there he may have walked out during a shift change of guards or climbed over the fence.

Wilson said Fulbright was late returning from the exercise period Saturday and had to knock on the door of the East Cell House to gain admittance from the yard. He feined drunkenness and when officers returned him to his cell, they discovered a dummy similar to the one Seibert had made, Wilson said.

Fulbright, 28, remains in his cell pending the outcome of the investigation, Inglish said.

Wilson said the escape "obviously involves carelessness" and a count of inmates moving to and from the exercise yards will begin immediately.

He noted that the recent exercising of prisoners was the first regulated movement of inmates at McAlester in several years.

Prior to the July, 1973, riot, inmates were allowed to roam inside prison walls almost at will. After the devastating riot, they remained for the most part locked in their cells for the next 10 months.

Seibert, convicted of killing a Missouri supermarket owner and of robbing a Tulsa store, was termed "a dangerous man made desperate by the prospect of long incarceration" by U. S. Dist. Judge Fred Daugherty earlier this year when Daugherty dismissed a civil right suit brought by the inmate.

TULSA, OKLAHOMA, WEDNESDAY, AUGUST 14, 1974

# Slayer Flees Prison; Police Guard Tulsan

By JIM HENDERSON
*Of the World Staff*

Tulsa attorney Roehm West Tuesday requested special police "security" following the prison escape of Joseph Seibert, a convicted killer West opposed in a civil rights suit earlier this year.

Seibert, who has a long list of escapes and escape attempts on his record, fled the state penitentiary in McAlester Sunday. His absence, however, was not noticed until Monday afternoon.

West said he requested the police protection because of Seibert's conduct during the civil rights trial and subsequent correspondence from him.

West said Seibert had not written threatening letters but the tone of some letters caused him to be apprehensive about the convict.

### WEST DEFENDED

former prison warden Ray Page earlier this year after Seibert filed a federal court suit seeking $15,100 damages for 302 days he was kept in a segregated cell. At one point during the trial, Seibert stood and called Page a liar.

"I'll get you," he said.

U.S. Dist. Judge Fred Daugherty ruled that Page was justified in keeping Seibert under maximum security lockup because of his history of prison breaks.

Seibert was serving 150 years for the robbery of a Tulsa supermarket in 1967. An employe of the market was wounded by gunshots during the robbery.

IN 1964, SEIBERT WAS convicted of murder in Missouri and later escaped by fleeing the courtroom during a hearing on an appeal of the conviction.

He was at large until arrested in Tulsa in connection with the supermarket robbery. He attempted to escape during a hearing in Tulsa in 1968 but was tackled by a jailer and assistant prosecutor as he ran down a courthouse stairway.

In March of 1973, Seibert and two other inmates were accused of trying to escape from the penitentiary by cutting through five barred windows and three steel doors before disguising themselves as guards and trying to walk off the prison grounds.

WEST BECAME INvolved in the civil rights litigation after the state attorney general's office refused to represent three state officials named in the suit.

Besides Page, Seibert filed the suit against deputy warden Park Anderson and then Corrections Department director Leo McCracken.

Assistant Police Chief Dan Phillips said West's request for special protection was granted and that officers are keeping a close watch on his home.

Page reportedly was out of state Tuesday.

Russell E. Lash, new state

*See West Asks on A-4*

# West Asks Protection By Police

*Continued from A-1*

corrections director, said Tuesday he would conduct a personal investigation into the escape, which he termed a "very serious breach of security."

THE 38-YEAR-OLD INmate apparently left the prison early Sunday but was not missed until the following afternoon when guards found a blanket dummy in his cell bunk.

Prison officials believe he scaled a prison wall and hid for several hours under a blanket on the roof of the old prison Administration building. They think he then used a garden hose to climb down from the roof. From there, he crawled under a barbed wire barricade to reach the outer prison wall.

Seibert may have then gotten through the final wall, prison officials say, by simply walking out with the guards during the 6 a.m. shift change.